## STATEMENT OF FACTS

The United States of America, by and through its undersigned attorneys, Defendant Adam Young ("Young") and Defendant Harrison Gevirtz ("Gevirtz") agree and stipulate to the following facts, which may be used or referenced in the Defendants' respective plea agreements, sentencing proceedings, and forfeiture proceedings:

1.      From 2016 to 2022, a type of telemarketing fraud scheme known as Tech-Support Fraud was common in the United States and elsewhere in the world. In this scheme, fraudsters convinced computer users that computer viruses or malware had been detected on their computers and then marketed putative computer protection services to the misled computer users.

2.      Although the scheme could be executed in a variety of ways, it typically involved fraudsters causing a pop-up ad to appear on a user's computer and falsely specifying in the pop-up ad that a virus or malware had been detected on the user's computer. Some of the Tech-Support Fraud pop-ups caused the computer to appear to freeze and be unusable without the user obtaining assistance from a technician. Such pop-ups were known as "blue screens of death" or "BSODs." Other types of Tech-Support Fraud pop-ups would falsely indicate that they were messages sent by legitimate technology companies, such as Microsoft and Apple. The pop-ups would provide a telephone number for computer users to call for assistance. After calling the numbers, the computer users would be directed to call-center agents who would attempt to convince the users to spend hundreds of dollars to rid their computers of the fictitious viruses or malware and/or to install protection software on the computers. As part of the so-called technical support services, call-center agents would remotely access the users' computers. In some cases, the call-center agents used that remote access to extract data – including personal identification information and account numbers – from the users' computers, and that information was subsequently used to extract funds without authorization from the users' accounts.

1 of 4

3.     In or about the start of 2017, Young and Gevirtz established and ran a business that provided telephone numbers, call recordings, call forwarding, and call tracking services for individual and entity customers, including customers who placed fraudulent Tech-Support Fraud pop-up ads on the internet and from those ads generated call traffic from computer-user callers from across Europe and the United States, including the District of Rhode Island.  Young and Gevirtz operated this business through their Cyprus corporation, C.A. Cloud Attribution, Ltd. ("C.A. Cloud"), and marketed those business services under a tradename.  Until April 2021, this business continued to operate under C.A. Cloud.  After April 2021, this business was transitioned to a successor corporation but maintained the same tradename.  The successor corporation was also owned by Young and Gevirtz.

4.     From the start of 2017 through April 2022, numerous customers of C.A. Cloud and the successor corporation were engaged in Tech-Support Fraud.  Young and Gevirtz knew that some of these customers were engaged in Tech-Support Fraud but they did not report this criminal conduct to any judge or other person in civil authority under the laws of the United States, including to any member of law enforcement.

5.     From 2017 through 2022, Young and Gevirtz received numerous complaints and law enforcement inquiries that were passed on from telephone number providers concerning Tech-Support Fraud being committed by customers of C.A. Cloud and its successor corporation.  Some of these complaints originated from individuals who had viewed the Tech-Support Fraud pop-up pages on their computers and thereby falsely believed that their computers had been infected with a virus or other malware, called the telephone number listed on the pop-up, and were convinced by call-center agents to pay to fix fictitious, non-existent and/or non-critical problems on their computers.

6.     Upon receiving these complaints, while terminating some customers, Young and Gervitz also advised some customers whom they knew to be engaged in

Tech-Support Fraud of techniques the customers could use to eliminate or greatly reduce the number of complaints they received and not experience any cessation of operation due to complaints. Young and Gevirtz also directed their Sales Associates to deploy these techniques with some Tech-Support Fraud customers to reduce the number of complaints and prevent termination of the customers' accounts. These techniques included having customers use large pools of telephone numbers on their pop-up ads and having the customers regularly rotate the telephone numbers that appeared on the pop-up ads. While there were other legitimate business reasons for deploying these techniques, Young and Gevirtz also knew that by having their customers use number pools and number rotation, their customers' numbers could generate fewer complaints and allow the customers to continue call activity in the event that some of their numbers were flagged by the number provider based on complaints.

7.      Young and Gevirtz implemented a policy that prohibited some tech support customers, including those engaged in Tech Support Fraud, from using proprietary Java Script on their landing pages. By disallowing these customers from using the proprietary Java Script on their landing pages, Young and Gevirtz prevented the tradename of their company from being visible to the user of the computer in the source code associated with the landing pages, and also prevented third-party spam attacks on their company's infrastructure.

8.      Young and Gevirtz on occasion introduced customers on their platform engaged in Tech-Support Fraud with other customers engaged in Tech-Support Fraud who were looking to buy and sell calls to one another. In addition, Young and Gevirtz directed their salespeople to market their call forwarding and tracking services to businesses that Young and Gevirtz knew were engaged in technical support, some of whom Young and Gevirtz knew were engaged in Tech-Support Fraud.

9.      Young and Gevirtz separated some customers who were conducting Tech-Support Fraud from those who were conducting legitimate, lawful activities and then

restricted the Tech-Support Fraud customers to using a telephone number provider that Young and Gevirtz knew was willing to accept high risk call traffic being conducted on the telephone numbers they provided, which included Tech-Support Fraud call traffic.

10.    Beginning in or about 2016, Young and Gevirtz owned a call center in Tunisia ("Call Center").  From the start of 2016 through April 2022, some customers and/or employees of the Call Center were engaged in Tech-Support Fraud, including fraudulent access of customers computers via compromised links, remaining on the computers of the victims, posing as official technical support service, and/or sending false invoices.

**Adam Young** _____

11 /12/25
Date

**Robert Goldstein**
Counsel for Adam Young

11 /13/25
Date

**Harrison Gevirtz** _____

_____
Date

**Zachary Hafer**
Counsel for Harrison Gevirtz

_____
Date

**Milind Shah**
Assistant U.S. Attorney

_____
Date

**Lee Vilker**
Assistant U.S. Attorney
Chief, Criminal Division

_____
Date

4 of 4

restricted the Tech-Support Fraud customers to using a telephone number provider that Young and Gevirtz knew was willing to accept high risk call traffic being conducted on the telephone numbers they provided, which included Tech-Support Fraud call traffic.

10.     Beginning in or about 2016, Young and Gevirtz owned a call center in Tunisia ("Call Center").  From the start of 2016 through April 2022, some customers and/or employees of the Call Center were engaged in Tech-Support Fraud, including fraudulent access of customers computers via compromised links, remaining on the computers of the victims, posing as official technical support service, and/or sending false invoices.

---
**Adam Young**

---
Date

---
**Robert Goldstein**
Counsel for Adam Young

---
Date

---
**Harrison Gevirtz**

---
11/12/25
Date

---
**Zachary Hafer**
Counsel for Harrison Gevirtz

---
11/14/25
Date

---
**Milind Shah**
Assistant U.S. Attorney

---
11/17/25
Date

---
**Lee Vilker**
Assistant U.S. Attorney
Chief, Criminal Division

---
11/17/25
Date

4 of 4